James BOSTON v. STATE of Arkansas

CA CR 99-605                                      12 S.W.3d 245

Court of Appeals of Arkansas
Division III
Opinion delivered February 16, 2000

*Maxie G. Kizer,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. James Boston appeals from his conviction for simultaneous possession of a controlled substance and a firearm[1] under Arkansas Code Annotated Section 5-74-106 (Repl. 1997). He argues two points for reversal. First, he contends that the State's evidence was insufficient to show that he constructively possessed the marijuana found in the trunk of his car. Second, he argues that the trial court erred in overruling his objections to the prosecutor's remarks made during closing arguments that he was a "mule" or "dope runner," because there was no evidence presented that he regularly transported drugs. We agree that the State did not present sufficient evidence to show that he knew the suitcase contained contraband. Therefore, we reverse his

---

[1] The appellant was originally charged with 1) criminal conspiracy to commit possession of a controlled substance with intent to deliver; 2) possession of a controlled substance with intent to deliver; 3) simultaneous possession of drugs and firearms; and 4) being a felon in possession of a firearm. Before trial the felon in possession of a firearm charge was severed. The trial court granted the appellant's motion for a directed verdict on the conspiracy charge, and the jury found him not guilty of possession with intent to deliver.

conviction and dismiss. *See Avett v. State*, 325 Ark. 320, 928 S.W.2d 326 (1996).

In August 1996, Officer Jay Paul Woods and Officer Richard Wingard of the White Hall Police Department were parked in a commuter parking lot adjacent to Highway 260 between Little Rock and Pine Bluff. A white Corvette exited the highway. Following behind the Corvette in an Oldsmobile, the appellant exited the highway and blinked his lights in an effort to get the attention of the driver of the car in front of him. The officers thought the appellant was signaling them for assistance. Officer Woods stopped both cars.

The occupants of the Corvette were Angel Urquhart, the appellant's cousin, and Ronald Reese, her boyfriend. Urquhart was driving, and Reese was in the front passenger seat. Urquhart, Reese, and the appellant exited their vehicles. Woods testified that as he approached them, he could smell alcohol, but could not tell from which of the three the odor emanated. Woods noticed that the appellant's eyes were bloodshot. At this point, Wingard arrived to assist Woods.

Woods asked if there was a problem, and the appellant stated they were going to Pine Bluff to visit his grandmother and he was trying to stop the Corvette to let them know they had made a wrong turn. Wingard asked if anyone had been drinking. The appellant stated he had one drink before he left Dallas, Texas. The officers administered a portable breathalyzer test. He registered .079, which was high enough to hold him for driving while intoxicated. At his discretion, Woods decided not to arrest the appellant for DWI, but would not allow him to drive the vehicle any further. The appellant had the registration for the car, but did not have proof of insurance, so the officers had the car towed in compliance with their departmental policy.

The officers then conducted an inventory search of the appellant's car, since it was to be towed. Woods found a loaded .45 caliber Ruger under the edge of the driver's seat. He also found a cup in the passenger floorboard partially filled with what he believed to be an alcoholic beverage. In the trunk of the appellant's car, the officers found a pair of pants and a pair of jeans in a plastic bag. The officers noted that the jeans had so much starch in them

they felt "like cardboard," and when they patted down Reese, that his jeans were similarly heavily starched. The officers also found a blue duffel bag containing personal hygiene items. The officers ascertained that the bag and clothes belonged to Urquhart and Reese. Underneath the bag of clothes, the officers found a suitcase that contained a brown paper bag that in turn, contained a black garbage bag. Inside the black garbage bag, the officers found five plastic Ziploc bags that contained a green vegetable substance, which was later sent to the Arkansas State Crime Laboratory and identified as five pounds of marijuana. The plastic bags were analyzed for fingerprints. One of the bags revealed a fingerprint from Reese, but none revealed the appellant's fingerprints.

Wingard also smelled alcohol on Urquhart, and performed a breathalyzer test on her. He searched the Corvette, and found a box of plastic baggies, a small bag containing a green vegetable substance, a marijuana cigarette, some alcohol, and a pistol. Urquhart and Reese admitted the marijuana cigarette belonged to them.

The above evidence was presented at trial by the State. The appellant also testified. He stated that he received a phone call from his grandmother that his brother was sick, that his brother refused to go to the hospital, and that his grandmother was afraid he was dying. The appellant testified that he had just worked a double shift, and decided to ask Urquhart, his cousin, to accompany him. He stated that Urquhart agreed to go so she could visit her aunt. He said that Reese told him the trunk in the Corvette was too small for any luggage, and when Reese asked if he could put the luggage in the appellant's car, the appellant agreed. The appellant maintained he did not know he had his wife's gun in the car, he was not suspicious because the items belonged to his cousin and her boyfriend, and he did not know that the suitcase had drugs in it.

The appellant moved for a directed verdict on the charge of simultaneous possession of drugs and firearms, arguing the evidence was insufficient to show that he knew the suitcase contained marijuana. The prosecution argued that the State showed the appellant was driving a car with five pounds of marijuana in the trunk, and that was sufficient to show constructive possession. The trial court denied the motion for a directed verdict, finding that there was sufficient evidence that the appellant constructively possessed the

suitcase because he was in control of the vehicle and controlled what entered the vehicle.

As he did below, the appellant argues on appeal that the evidence was insufficient to show that he constructively possessed the marijuana, and thus was insufficient to sustain a charge of simultaneous possession of a controlled substance and a firearm. He maintains constructive possession requires that a person must have knowingly possessed the contraband, must have intended to control the contraband, and must have controlled the contraband. The State counters that the appellant owned and controlled the vehicle and the contents of his vehicle, and that it was the task of the jury to believe or disbelieve the circumstances surrounding the ownership of the luggage and the possession of its contents. The State further asserts that because the vehicles were traveling together, the jury could have inferred that the appellant was an additional person in control of the contraband.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Killian v. State*, 60 Ark. App. 127, 128, 959 S.W.2d 432, 433 (1998). When reviewing a denial of a directed verdict, we look at the evidence in the light most favorable to the State, considering only the evidence that supports the judgment or verdict. *Darrough v. State,* 330 Ark. 808, 810, 957 S.W.2d 707, 708 (1997); *Killian, supra* at 128, 959 S.W.2d at 433. We will affirm if there is substantial evidence to support a verdict. *Ryan v. State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990). Evidence is sufficient to support a verdict if it is forceful enough to compel a conclusion one way or another. *Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1993). Where the evidence is circumstantial, the appellate court must consider whether the evidence was sufficient to exclude all other reasonable hypotheses. *Carter v. State*, 324 Ark. 395, 398, 921 S.W.2d 924, 925 (1996).

Constructive possession may be imputed when the contraband is found in a place that is either accessible to the defendant and subject to his exclusive dominion and control, or subject to the joint dominion and control by the defendant and another. *Cary v. State*, 259 Ark. 510, 534 S.W.2d 230 (1976). In order to prove constructive possession, the State must establish beyond a reasonable doubt that 1) the defendant exercised care, control, and management over the contraband, and 2) that the accused knew the matter

possessed was contraband. *See Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998); *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995).

It is beyond dispute that the appellant exercised control over the contraband. He owned and occupied the vehicle where the contraband was found; he had exclusive access to the contraband because he alone had the key to the trunk; and he consented to have it placed it in his trunk.

However, even viewing the evidence in the light most favorable to the State, we find no evidence in the record from which a jury might have reasonably inferred that the appellant knew the suitcase contained contraband of any kind, much less that he knew the suitcase specifically contained marijuana. The only evidence presented that anyone knowingly possessed any marijuana was that Urquhart and Reese admitted the marijuana cigarette found in her car belonged to them. Further, the State did not dispute that 1) Reese asked the appellant to carry the suitcase in his trunk; 2) the suitcase was found with other items belonging to Urquhart and Reese; 3) the marijuana was well-wrapped inside several bags and the State made no assertion that any odor emanated from the suitcase; 4) Reese's fingerprint was found on one of the plastic bags, whereas the appellant's fingerprints were not found on any of the items seized by the State; and 5) the reason for the appellant's trip was to visit his sick brother, who died during the pendency of the appellant's trial.

The State's argument that, because the vehicles were traveling together, the jury could have inferred that the appellant was an additional person in control of the contraband, is not persuasive. The State would essentially have us remove the knowledge requirement from the constructive possession analysis by holding that when a driver agrees to carry a parcel that belongs to another person in his car, and the parcel is later found to contain contraband, this conduct is sufficient to demonstrate the driver knows the container holds contraband. We decline to so hold. While this conduct may be sufficient to demonstrate control of the container, it is not sufficient to demonstrate knowledge of the contents of the container, and our case law clearly requires the State must prove both elements to show constructive possession. *See Fultz, supra,* and *Darrough, supra.*

Further, the trial court in this case acknowledged that the State had not met its burden of proof to show the appellant knew the suitcase contained contraband. At the close of the State's evidence, immediately prior to the appellant's motion for a directed verdict on the simultaneous possession charge, the trial court granted appellant's motion for a directed verdict on the conspiracy charge, stating: "The State has not proved that Mr. Boston had knowledge of the contents of the suitcase. Without his having that knowledge, the State has failed to prove that he agreed to participate in anything. He might as well have been an unwitting participant."

Immediately thereafter, in response to the appellant's motion on the simultaneous-possession charge, the prosecutor stated flatly: "Your Honor, we have a man driving a car with five pounds of dope in the trunk. That is constructive possession." In denying the appellant's motion on the simultaneous-possession charge, the trial court stated:

The suitcase containing this marijuana was clearly in the defendant's vehicle *whether or not the contents of the suitcase were fully within his knowledge. He constructively possessed that suitcase because he had control of the vehicle, and he was in control of what entered the vehicle. Therefore, the defendant had at least constructive possession,* and the Court holds that constructive possession was demonstrated.

(Emphasis added.)

At this point in the trial, it appears that the prosecution and the trial court either erroneously equated control of the container with knowledge of its contents, or disregarded the requirement that the State prove beyond a reasonable doubt that the appellant knew the suitcase contained contraband. The only evidence presented after this point was the appellant's testimony and that of his wife, who mainly testified that she owned the gun and sometimes kept it in the car.

It is clear that at the close of the State's case, by the trial court's own admission, the State had not demonstrated that the appellant knew the suitcase contained contraband. Certainly neither the appellant's testimony nor his wife's testimony provided any subsequent basis upon which the jury could infer the appellant knew the suitcase contained contraband. Despite the erroneous contentions

by the State, the mere fact that an object belonging to someone else is found in a vehicle is not sufficient to show that the driver has knowledge of its contents. That mere fact is insufficient to demonstrate a prima facie case of constructive possession.

Therefore, we reverse and dismiss the appellant's conviction pursuant to *Avett, supra*. Because we reverse on the basis of the insufficiency of the evidence, we need not address the appellant's second argument that the prosecutor's closing arguments were improper.

Reversed and dismissed.

PITTMAN and ROGERS, JJ., agree.