2010 Ark. App. 813

**Anthony BELL, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–526.**

Court of Appeals of Arkansas.

Dec. 8, 2010.

Louis L. Loyd, Malvern, for appellant.

Dustin McDaniel, Atty. Gen., Valerie Glover Fortner, Asst. Atty. Gen., Little Rock, for appellee.

**ROBERT J. GLADWIN, Judge.**

This is an appeal from a jury verdict in which appellant Anthony Bell was convicted of two counts each of aggravated robbery and theft of property, as well as using a firearm in the commission of the offenses. He was sentenced to an aggregate term of twenty-two years' imprisonment in the Arkansas Department of Correction and assessed a fine of $1,000.00 on each count of theft of property. Appellant ar-

gues that the circuit court erred in granting the State's motion in limine restricting the evidence of a subsequent crime in support of his affirmative defense of duress. We affirm.

On June 2, 2008, between 3:00 a.m. and 3:20 a.m., appellant, together with Brian Clay, robbed an EZ Mart and then a Shell convenience store, both in North Little Rock, Arkansas. Tim Davis waited in the car during both robberies. Approximately four hours after the robberies, Davis shot and killed a man in Malvern, Arkansas. Appellant, Clay, and a female named Shkendra Braxton were with Davis in Malvern; however, appellant's charges in the killing were *nolle prossed* in exchange for his testimony against the other three. Because the remaining three individuals pled guilty, appellant never had to testify against them.

On August 8, 2008, appellant was charged with the above-stated robbery and theft-of-property offenses. Prior to trial, he filed a notice of intention of asserting the affirmative defense of duress. Appellant's trial was held on January 21, 2010. On that date, prior to the start of trial, a hearing was held in chambers on a motion in limine filed by the State seeking to prohibit appellant from referencing or producing evidence regarding the homicide that occurred in Malvern subsequent to the robberies. The State, in support of its motion, argued that evidence of the homicide was not relevant under Rule 402 (2010) of the Arkansas Rules of Evidence, and if it was relevant, Rule 405 (2010) provides that the evidence could only be used if it was essential to the defense. The State argued that because the homicide was subsequent to the robberies, appellant could not rely on it for the defense of duress.

Appellant responded that the two investigations were intertwined and that statements and evidence were given to both North Little Rock and Malvern investigators that contained information regarding the robberies and the homicide. Appellant argued that Davis forced him to commit the robberies and forced him to travel with the three to Malvern and that denying him the right to produce the evidence would hamper the jury's ability to hear all the evidence related to his case.

The circuit court granted the State's motion and ordered that there be "No mention of the Malvern homicide, period." Appellant was then advised that he would be allowed to proffer the evidence. The case then proceeded to trial.

The State called Officer Richard Gray; EZ Mart clerk, James Seyller; Shell clerk, Lauren Grubbs; 911 operator, Mary Denton; Investigator Dane Pederson; and appellant's co-defendant, Brian Clay. Appellant testified on his own behalf and called as a witness, Ryan Burris, formerly the investigator for the Malvern Police Department.

The State offered testimony that appellant and Brian Clay robbed the convenience stores and were armed when doing so. The State produced supporting video surveillance and video still photos. The State also offered testimony from the convenience-store clerks identifying appellant and co-defendant Clay. Investigator Pederson testified that appellant admitted to the robberies.

Appellant testified that he was taken by Timothy Davis, Shkendra Braxton, and Clay to the convenience stores and forced by Davis to enter and rob them with Clay. He testified that Davis threatened to kill him and his grandmother if he did not do so and that he ordered Brian Clay to shoot him if he tried to run. Appellant testified that he feared for his life and that of his grandmother, that he did not know Davis or Clay, and had just met them that day. Appellant called Burris who testified that

he had questioned appellant concerning the robberies and that he believed appellant was being truthful.

The circuit court gave the standard instructions for the offenses charged and the AMCI2d 601 instruction for the affirmative defense of duress. Appellant was granted the opportunity to proffer testimony and evidence regarding the Malvern homicide while the jury deliberated. Appellant introduced the unredacted statement given by him to Investigator Pederson and proffered the testimony of Burris as to the statement given to him by appellant concerning the homicide and the robberies. Through Burris, appellant introduced the Hot Spring County judgment and commitment orders of Davis and Clay concerning the homicide. Burris also testified as to his knowledge that the Malvern homicide charge was *nol prossed* against appellant based on the prosecutor's belief that the evidence indicated that appellant was coerced by physical threats to take part in the homicide.

Appellant was found guilty and was sentenced pursuant to a judgment and commitment order filed on January 28, 2010. On February 22, 2010, appellant timely filed his notice of appeal from which this appeal is taken.

■ We note initially that appellant failed to raise a constitutional argument to the circuit court, obtaining only an evidentiary ruling on the matter. The circuit court granted the State's motion, finding the evidence irrelevant in light of the fact that it happened approximately four hours after the robberies. Therefore, only the evidentiary ruling is preserved for review. *Flowers v. State*, 92 Ark. App. 337, 213 S.W.3d 648 (2005) (holding that even constitutional arguments must be raised below in order to be preserved for appellate review).

Our supreme court has noted that circuit courts have broad discretion with regard to evidentiary rulings, and when reviewing a ruling on the admissibility of evidence, the circuit court will not be reversed absent an abuse of that discretion. *Owens v. State*, 363 Ark. 413, 214 S.W.3d 849 (2005). "Abuse of discretion" is a high threshold that does not simply require error in the circuit court's decision, but establishes that the decision was arbitrary and groundless. *See Teater v. State*, 104 Ark. App. 268, 290 S.W.3d 623 (2009).

■ Appellant acknowledges that (1) he entered the convenience stores; (2) he was armed; and (3) he took money from one of the stores. But appellant asserts that he was under duress when he took such actions and that he sought to support his affirmative defense by offering testimony of the Malvern homicide that occurred within hours of the robberies involving the same individuals. He argues that the circuit court denied his fundamental right to present his defense by granting the State's motion in limine.

Appellant maintains that under *Ray v. State*, 304 Ark. 489, 803 S.W.2d 894 (1991), the evidence in question is both material and favorable to his case. He notes that the homicide took place within a few hours of the two robberies, the participants were the same as in the robberies, and evidence indicates that the Malvern homicide resulted from an attempted robbery. He contends that it is more than probable that a jury having evidence of the homicide would be more inclined to give weight to a defense of duress under the circumstances of this case.

Appellant maintains that he was unable to present all of the relevant evidence to the jury about him being under physical threat and duress. The evidence in question that was proffered included the unredacted statement made to Pederson, the testimony of Burris, copies of the judgment and commitment orders on Davis

and Clay regarding the Malvern homicide, and a transcript of the final hearing concerning the Malvern homicide charges against appellant. Appellant reiterates that the jury should have been afforded the opportunity to hear the whole ·story and not just the parts selected by the State.

We hold that appellant's reliance on *Ray* is factually inapposite, as it involved an appellant who sought to introduce evidence that a third party had threatened the murder victim nearly a year before in order to establish that someone else had motive to commit the murder. *Id.* at 494, 803 S.W.2d at 896–97. There, the circuit court limited the evidence under Arkansas Rule of Evidence 403, finding it both remote and immaterial. *Id.* The case did not involve the introduction of a subsequent crime to bolster an affirmative defense, as here. While our supreme court acknowledged in *Ray* that few rights are more fundamental than that of an accused to present evidence in his own defense, it added that in exercising this right, the accused must comply with established rules of procedure and evidence and demonstrate that the evidence is both material and favorable to his case. *Id.* The State argues, and we agree, that appellant failed to establish that the evidence related to the Malvern homicide was material or admissible. Accordingly, we hold that the circuit court did not abuse its discretion in excluding it.

Rule 402 of the Arkansas Rules of Evidence provides that irrelevant evidence is inadmissible. Rule 401 (2010) of the Arkansas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The test of admissibility of evidence over an objection for irrelevancy is whether the fact offered into proof affords a basis for rational inference of the fact to be proved. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). Even if relevant, evidence may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Ark. R. Evid. 403 (2010). Arkansas Rule of Evidence 405(b) provides that in cases where character or a trait of character is an essential element of a charge, claim, or defense, proof may also be made of specific instances of conduct.

Even if we were to hold that the evidence of the subsequent homicide was relevant under Rule 402, and therefore potentially admissible, Rule 405 would keep it out because the specific instance of conduct was not relevant to appellant's defense. A murder that occurred three hours after the robberies could not have affected appellant's state of mind during the preceding robberies. Arkansas courts have long held that "[e]vidence of bad acts not within a defendant's knowledge cannot reasonably be construed as probative of the defendant's belief." *See Sims v. State*, 19 Ark. App. 45, 50, 716 S.W.2d 774, 777 (1986) (evidence of victim's arrest and possession of a gun that was unknown to defendant at time of murder inadmissible to explain defendant's state of mind); *Britt v. State*, 7 Ark. App. 156, 645 S.W.2d 699 (1983) (specific evidence of violent character unknown to defendant at time of crime inadmissible to support affirmative defense). Because appellant's motivations during the robberies could not have been affected by a homicide that had not yet occurred, it was properly excluded as immaterial and irrelevant evidence of his mental state at the time of the crimes.

Appellant testified at trial and was able to explain to the jury his fear of Davis and how the events of the day culminated in him participating in the robberies. He

testified that he did not willingly rob the stores, claiming that Clay and Davis had tried to rob him earlier that day, and that, when he did not have any money for them to take, they stated, "since you ain't got no money, you going to get me some." Appellant explained that he feared for his life and testified that Davis threatened to kill him and his grandmother if he did not participate. Finally, appellant stated that Davis told Clay to shoot him if he tried to run during the robberies. When asked whether he had any knowledge of Davis or his reputation for violence at the time of the robberies, appellant could only state that Davis's tattoos and the way he presented himself led him to believe he was violent.

In contrast, one of the victims, EZ Mart clerk James Seyller, testified that, throughout the robbery, he never heard either robber threaten the other and that the two men were absolutely acting in concert. Lauren Grubbs, a victim of the second robbery at the Shell station, testified similarly that she never witnessed any threats or aggression between the two men.

Investigator Pederson arrested both Clay and appellant and took both men's statements. Through cross-examination, Investigator Pederson testified that when he took appellant's statement, appellant maintained that he was forced to commit the crimes and that he had feared Clay would shoot him if he tried to run. On redirect, however, Investigator Pederson testified that nothing in his investigation corroborated appellant's assertions that he was forced to commit the crimes. To the contrary, Clay testified against appellant and stated that appellant was unquestionably a willing participant in the crimes and that neither he nor Davis ever threatened him to force his participation.

The jury heard appellant's firsthand account of the events that led up to his involvement in the robberies, including his supposed fear of both Davis and Clay and rejected it as proof of duress. The jury was not required to believe the testimony of any witness, certainly not the self-serving testimony of the accused. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). We hold that the evidence of the subsequent homicide was properly excluded as immaterial and irrelevant to appellant's state of mind over three hours earlier.

Affirmed.

VAUGHT, C.J., and HENRY, J., agree.