SLIP OPINION



Cite as 2013 Ark. 329

# SUPREME COURT OF ARKANSAS

No. CR-12-1034

| | | |
|---|---|---|
| STATE OF ARKANSAS | | **Opinion Delivered** September 19, 2013 |
| | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. CR1990-1238] |
| EDWARD MILLER | | HONORABLE WENDELL LEE |
| | APPELLEE | GRIFFEN, JUDGE |
| | | AFFIRMED. |

**PAUL E. DANIELSON, Associate Justice**

The State of Arkansas appeals from the order of the Pulaski County Circuit Court terminating Appellee Edward Miller's obligation to register as a sex offender. The State's sole point on appeal is that the circuit court erred by concluding that Miller no longer posed a threat to the safety of others, thereby finding that he had met the statutory requirements to have his obligation to register as a sex offender terminated. We affirm.

In January 1991, Miller pleaded guilty to the felony offense of first-degree sexual abuse and the misdemeanor offense of second-degree false imprisonment. In exchange, he received a twenty-year prison sentence for the felony. Miller was paroled from the Department of Correction on July 7, 1995, and was required to register as a sex offender. In May 2012, Miller filed a pleading pursuant to Arkansas Code Annotated section 12-12-919(b)(2), seeking an order terminating his obligation to register as a sex offender. After a hearing on

the matter, the circuit court entered an order finding that Miller had been released from prison for over fifteen years, Miller had not committed a sexual offense in the past fifteen years, Miller was not likely to pose a threat to the safety of others, and, therefore, that Miller was no longer required to register as a sex offender. It is from that order that the State appeals.

In a State appeal, we first determine if the issue is properly before us under Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal before we reach the merits. However, as the State asserts in its informational statement, the instant appeal is civil in nature. This court has previously held that although a case may be docketed with a "CR" number, the State need not satisfy the requirements of Rule 3 if the matter is neither a direct nor an interlocutory appeal following a prosecution, but is an appeal arising from a collateral procedure and is civil in nature. *See, e.g.*, *State v. Estrada*, 2013 Ark. 89, ___ S.W.3d ___ (a State appeal from a circuit court's grant of a Rule 37.1 petition); *State v. Tyler*, 2010 Ark. 307 (a State appeal from an order to seal criminal convictions); *State v. Wilmoth*, 369 Ark. 346, 255 S.W.3d 419 (2007) (a State appeal from an order of the circuit court granting a defendant's motion to dismiss certain charges on the basis that his right to speedy trial had been violated). Because this is a collateral proceeding, the State need not satisfy the requirements of Rule 3.

Pursuant to Arkansas Code Annotated section 12-12-919(b)(1) (Repl. 2009), a sex offender previously obligated to register on the Arkansas Sex Offender Registry may apply to the sentencing court for an order terminating that obligation fifteen years after either the

release from incarceration or other institution or having been placed on probation or any other form of community supervision by the court. *See also Harrell v. State*, 2012 Ark. 421. Subsection (b)(2) further instructs that,

> (2) The court shall grant an order terminating the obligation to register upon proof by a preponderance of the evidence that:
>
> (A) The applicant placed on parole, supervised release, or probation has not been adjudicated guilty of a sex offense for a period of fifteen (15) years after the applicant was released from prison or other institution; and
>
> (B) The applicant is not likely to pose a threat to the safety of others.

Ark. Code Ann. § 12-12-919(b)(2)(A), (B).

After holding a hearing on August 20, 2012, and considering all the evidence and testimony presented, the circuit court granted Miller's petition to terminate his obligation to register as a sex offender. In doing so, it found that Miller had met the statutory requirements, including that he was not likely to pose a threat to the safety of others. It is that specific finding that the State now challenges on appeal. Bench trials of civil matters occurring on or after July 1, 1979, are subject to the clearly erroneous standard of review. *See* Ark. R. Civ. P. 52; *see also State v. Jernigan*, 2011 Ark. 487, 385 S.W.3d 776.

Six witnesses testified in support of Miller. Each of those witnesses testified that in the time they had known him, they had not seen Miller act violent or behave in an inappropriate manner toward other people. Those witnesses also discussed the strides that Miller had made toward sobriety and the steps he had taken to change his life. Seven other individuals wrote letters to the court on Miller's behalf. Two witnesses testified on behalf of the State, only one



of which discussed his character.

Sherri Flynn, administrator of the Sex Offender Screening and Risk Assessment (SOSRA) program, testified that she had witnessed Miller being difficult and aggressive at an assessment. Her testimony was that Miller had jerked his hand away repeatedly when her staff tried to administer a finger prick for a DNA sample, that he raised his voice, and that he would not leave when he was first asked and "had a glare." However, on redirect examination, Flynn admitted in questioning that Miller was upset and not in a good mood when all this happened, he did not strike her, and he did not swing at her or do anything violent. His resistance according to Flynn was that he wouldn't leave the chair, was trying to explain to her what happened, and was talking aggressively. She admitted that "he basically sat in the chair until someone said 'you've got to go' and he left." After the incident that Flynn described, Miller was apparently assigned by the SOSRA staff a certain default score on his risk assessment because of his behavior. Miller appealed that score, and it was brought down a level.

In addition to the other witnesses called, Miller testified on his own behalf. While the State takes issue that Miller did not seem to "admit straightforwardly the violent nature of his crimes," the State's own witness testified that, from the beginning of this case, Miller maintained that he did not do all of which he was accused. Flynn testified that, "[h]is version of the facts and why he pled guilty was pretty much the same thing it was today, which [effectively was], he was there, he had sex with her, but he didn't force her." Section 12-12-919 contains no provision that the petitioner admit guilt.

This court has long held that we defer to the circuit court's superior position in determining the credibility of the witnesses. *See Livingston v. State*, 2013 Ark. 264, ___ S.W.3d ___. The circuit court expressed that it was impressed with witnesses on both sides, but believed that Miller had demonstrated that he was ready to have the obligation to register lifted. We have no basis or authority to substitute our judgment for that of the circuit court. Therefore, this court cannot hold that the circuit court clearly erred in finding that Miller is not likely to pose a threat to the safety of others, and we must affirm.

Affirmed.

*Dustin McDaniel*, Att'y Gen., by: *David R. Raupp*, Senior Ass't Att'y Gen., for appellant.

*James Law Firm*, by: *William O. "Bill" James, Jr.* and *Lee D. Short*, for appellee.