

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-17-191

| | |
|---|---|
| MATTHEW DEWAYNE SCANTLING<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** October 25, 2017<br><br>APPEAL FROM THE BENTON<br>COUNTY CIRCUIT COURT<br>[NO. 04CR-00-992]<br><br>HONORABLE ROBIN F. GREEN,<br>JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from the circuit court's denial of his application to terminate his obligation to register as a sex offender. His sole argument on appeal is that the circuit court committed clear error because it failed to evaluate the statutory requirements to terminate registration and instead continued registration to punish appellant because it believed his original sentence was too light. We affirm.

Appellant was charged by criminal information, filed on November 9, 2000, with violation of a minor in the first degree, a Class C felony. It was alleged that "[o]n or about July 1998 & March 2000, in Benton County, Arkansas, the defendant engaged in sexual intercourse and deviate sexual activity with A.R., who was less than eighteen (18) years of age, and the defendant was a teacher in A.R.'s school."

On March 13, 2001, a plea agreement and order was entered showing that appellant had pled guilty as charged and sentencing him, under Act 346 of 1975,[1] to four years' probation and 120 days' incarceration in the county jail[2] as well as court costs and fees. He was also ordered to register as a sex offender. Appellant was released from jail on July 2, 2001.

Appellant filed a petition for early termination and to seal his record on December 23, 2002.[3] On April 4, 2003, the circuit court entered an order granting early termination of appellant's probation and sealing the record of the offense. On March 8, 2004, appellant petitioned the court to terminate his "requirement for reporting." Following a hearing, the circuit court entered an order taking the petition under advisement and ordering him to submit a brief. Appellant submitted a brief in support of his petition to terminate his sex-offender-registration requirement and a petition to seal and expunge his record on June 23, 2004. The petition was denied on August 23, 2004.

Appellant then filed a petition to terminate his sex-offender-registration requirement on April 31, 2016. Appellee responded on July 29, 2016, objecting to appellant's petition and noting that it was requesting that appellant be reassessed by the Sex Offender

---

[1]*See Turley v. State*, 2013 Ark. App. 427, at 1–2, 429 S.W.3d 293, 294 ("Act 346 of 1975 (codified at Ark. Code Ann. §§ 16-93-301 to -303), . . . authorizes a trial court to defer proceedings, place a first-time offender on probation, and then dismiss the case and expunge the record at the termination of the defendant's probation.").

[2]Appellant's incarceration was subject to work release on Monday through Friday, after he had completed thirty days of incarceration.

[3]Though the document's title included "petition for early termination," appellant did not specify that he was seeking early termination of his probation.

Community Notification Assessment Program, which had assessed appellant "almost fifteen years" prior to the petition and had listed him as a risk level of two.[4]

A hearing on the matter was held on November 16, 2016. Appellant was the only witness. He testified, in pertinent part, that he was given a voice test and the report therefrom found no deception. He contacted the Logan County sheriff who provided a letter of reference supporting his application.[5] He stated that the "Booneville Police department had no objection if they needed to provide letters also."

Appellant did not believe he posed any threat. He testified to the following regarding the effect of his actions:

> The events of 16-17 years ago were devastating to me and my wife of 28 years. The ordeal that we had to go through was hard on me, but was even harder watching her go through it because she was innocent. She didn't do anything wrong. I put her through this; I put my children through this. I know people hear about jailhouse conversations or fake good or things like that. In my case that's just not absolutely the truth. My wife led me to a church that she was involved with and that became our life. Everything I do now is based on my faith in Christ.

He went on to state that "back then," he was a "heavy drinker" and that he "made a terrible, terrible choice and a lot of people suffered for it." With regard to the victim he stated that he "can't imagine the pain [he] caused [her] and her family at the time" and that "[w]hen he looked back on those events at the time, [he was] disgusted by what [he] did." He

---

[4]This assessment included a voice-stress-analysis report, otherwise known as a polygraph.

[5]The letter was not admitted after appellee's sustained objection to the letter on hearsay grounds, given that the sheriff was not available for cross-examination.

acknowledged that he did not blame his victim as it was "something [he] did." He went on to state:

> At this time, I ask that the Court would take this registration requirement away. I don't think people that haven't been there can understand what the stigma is and how hard this is and what people call you and call your kids and the things that happen because of this. I've been doing it for 15 years, and it is hard. I acknowledge the reason for the registration based on what I had done, but I'm asking to be released from that as the statute permits.

On cross-examination, appellant testified that he saw a psychiatrist in Fort Smith for over two years and remained a member of a "men's group for accountability for the majority of the last ten years"; he started that group in 2003 or 2004. He stated that the group had a mentoring component in which you "become a mentor yourself" and "[try] to help other men in these types of situations." He noted that he and his wife had counseled other couples on their issues of a "sexual nature"; primarily pornography.

In its ruling from the bench, the circuit court stated:

> Instead of doing 120 days in the county jail, you could have spent over a decade in the Department of Corrections. You got a tremendous break. You are testifying here today about how hard this was on you and your family. You created this. You were a teacher. You had sex with a student.
>
> . . . .
>
> I find that you do still pose a threat to the community.
>
> . . . .
>
> You're testifying before the Court how hard this was on you, when you caught a tremendous break.

It then denied appellant's petition. Appellant then asked the circuit court to "illuminate what the Court found to reach the decision that the defendant poses a continued risk to the community." The circuit court responded:

I'm not satisfied there has been any type of rehabilitation of him. The psychiatric counseling that he received, he testified it was for a myriad of issues, including alcoholism. I'm not certain that there has been any type of rehabilitative effort. The charges, which you pled guilty to, or the one count you pled guilty to, were very serious. He could have easily been charged with at least four counts of rape. Somehow, he got this charge and Act 346. I think the law has been corrective in that regard now, but I find that he poses a continuing threat.

Its order finding that appellant "poses a continuing threat to the community and that there has not been a satisfactory effort made by the Petitioner to rehabilitate given the serious nature of his offense" was entered November 28, 2016. This timely appeal followed.

We review the circuit court's findings on a section 12-12-919(b)(2)(B) petition under a clearly-erroneous standard of review.[6] A finding is clearly erroneous, when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake was made.[7]

Appellant argues that the circuit court committed clear error because it failed to evaluate the statutory requirements to terminate registration and instead continued registration to punish appellant because it believed his original sentence was too light.[8] Appellee argues that appellant presented no evidence. We disagree. Appellant testified and submitted polygraph results; that was evidence. The issue before this court is not whether

---

[6]*Stow v. State*, 2016 Ark. App. 84, at 3, 482 S.W.3d 752, 753 (citing *State v. Khabeer*, 2014 Ark. 107) (citing Ark. Code Ann. § 12-12-919(b) (Repl. 2016)).

[7]*Id.* at 3, 482 S.W.3d at 754.

[8]Despite appellant's subargument that the circuit court made no findings of fact, we specifically note that the circuit court made findings in direct response to appellant's request for more information regarding why it found that appellant posed a threat to society. Accordingly, we do not address this subargument.

there was evidence—there was—but because appellant's testimony and the polygraph were the only evidence before the circuit court, the issue before this court is credibility.[9] The circuit court is not required to believe the testimony of any witness, certainly not the self-serving testimony of the accused.[10] Arkansas's appellate courts have never wavered from the longstanding rule that it is the province of the circuit court to determine the credibility of witnesses.[11]

Arkansas Code Annotated section 12-12-919 permits a sex offender to apply for an order terminating his or her obligation to register fifteen years after either being released from incarceration or other institution, or having been placed on probation or any other form of community supervision by the court.[12] After a hearing,[13] the court shall grant an order terminating the obligation to register upon proof by a preponderance of the evidence

---

[9]*See State v. Miller*, 2013 Ark. 329, at 3 ("The circuit court expressed that it was impressed with witnesses on both sides, but believed that Miller had demonstrated that he was ready to have the obligation to register lifted. We have no basis or authority to substitute our judgment for that of the circuit court."); *see State v. Khabeer*, 2014 Ark. 107, at 7 ("This is therefore not a failure of proof, as the State contends, but a credibility determination by the circuit court. The credibility of the witness in this instance was for the trial court to weigh and assess.").

[10]*Collins v. State*, 2014 Ark. App. 574, at 4, 446 S.W.3d 199, 203 (citing *Bell v. State*, 2010 Ark. App. 813, 379 S.W.3d 748).

[11]*Id.* (citing *Welch v. State*, 364 Ark. 324, 219 S.W.3d 156 (2005)).

[12]Ark. Code Ann. § 12–12–919(b)(1)(A)(*i*).

[13]Ark. Code Ann. § 12–12–919(b)(1)(B)(*i*).

that the applicant has not been adjudicated guilty of a sex offense during that fifteen-year period and that the applicant is not likely to pose a threat to the safety of others.[14]

Appellant's September 29, 2016 polygraph report included the "official version" of the offense.[15] It stated that appellant admitted that he "had sexual contact with the victim on five different occasions that consisted of sexual intercourse, oral sex, and fondling of the victim's vagina with a vibrator," on school grounds and at his home, between July 1998 and March 2000. It stated that another minor student alleged that appellant "flirted with her" and that appellant had been warned by "numerous faculty members including the principal who reported [appellant] about his close interaction with [the victim] and [appellant] continued his relationship[.]" The "official version" makes clear just how serious appellant's actions were.

The report found no deception to appellant's answers in the negative that he had not had sexual contact with any student other than the victim while working at the school. We note that one of the questions to which he answered no, and no deception was found, specifically asked, "Since you have been an adult, have you had sexual contact with any person under age 16?" The "official version" of the sex offense states that the victim was

---

[14]Ark. Code Ann. § 12-12-919(b)(2)(A) & (B).

[15]This court notes that Arkansas Code Annotated section 12-12-704 states that "[t]he results of any such examination as provided in this subchapter shall be inadmissible in all courts in this state." (Repl. 2016). The only exception to this rule occurs when both parties stipulate to the admissibility of the polygraph results in writing. *Ramaker v. State*, 345 Ark. 225, 234, 46 S.W.3d 519, 525 (2001) (citing *Foster v. State*, 285 Ark. 363, 687 S.W.2d 829 (1985)). There is no written stipulation to the admission of the polygraph in the record; however, appellee requested that appellant submit to a polygraph in its July 29, 2016 response in opposition to appellant's petition to terminate registration.

fourteen years old at the time of the first interaction in July 1998; the affidavit for warrant arrest states the same. Appellant admitted this July 1998 interaction. The United States Supreme Court has held that polygraph results only serve to bolster or attack a witness's veracity[.]"[16] Accordingly, the polygraph weighs on appellant's credibility only and not the truth of the matter.

At the hearing, appellant's testimony was essentially that he did not believe he posed a threat, that it had been "hard" on him and his family because of the stigma that comes with being labeled a sex offender, and that he and his wife were counseling couples struggling with issues of a sexual nature. He provided no testimony—other than that "[e]verything [he does] now is based on [his] faith in Christ"—regarding any change in his character that would keep him from posing a threat to the community. Though he testified to a sheriff and a police department being in support of his petition, neither the sheriff nor a police officer appeared in court to support his assertion. Though he asserted that he attended therapy for over two years, he provided no evidence from the psychiatrist, and the psychiatrist did not appear to testify, on what appellant was counseled for or whether he or she thought the services were successful. Appellant provided no other witness, such as his

---

[16]*Rollins v. State*, 362 Ark. 279, 285, 208 S.W.3d 215, 217 (citing *United States v. Scheffer*, 523 U.S. 303 (1998)).

pastor,[17] a family member, or a long-time friend or acquaintance.[18] Furthermore, the polygraph found no deception to a question that appellant answered in the negative, but the record shows that the question clearly should have been answered in the affirmative.

The circuit court stated that it was "not certain that there had been any type of rehabilitative effort" by appellant. The circuit court obviously did not believe appellant—and the polygraph did not change its opinion—and this court does not disturb credibility findings.[19] We affirm.

Affirmed.

VIRDEN and KLAPPENBACH, JJ., agree.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Edwin N. McClure* and *Sarah L. Waddoups*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[17]*See Stow v. State*, 2016 Ark. App. 84, at 3, 482 S.W.3d 752, 754 (Where Stow's pastor testified that he "had been "up-front and candid" about his history, that Stow was careful to not be around children at the church, and that Rogers had no concerns about his own children being around Stow," but the denial of the petition was affirmed because there was "contrary, detailed evidence in the risk-assessment report.").

[18]*See Miller*, 2013 Ark. 329 (Miller presented six witnesses who testified that in the time they had known him, they had not seen Miller act violently or behave in an inappropriate manner toward other people and discussed the strides that Miller had made toward sobriety and the steps he had taken to change his life.).

[19]*See Khabeer*, 2014 Ark. 107, at 2 ("[D]eterminations of credibility are within the province of the fact-finder.").